UNITED STATES

v.

**Senior Airman Duane K. SMITH, FR 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, United States Air Force.**

ACM S24876.

U. S. Air Force Court of Military Review.

22 Aug. 1980.

Appellate Counsel for the Accused: Colonel Larry G. Stephens, Major Robert G. Gibson, Jr. and Major Marc C. Denkinger, USAFR.

Appellate Counsel for the United States: Colonel James P. Porter.

Before EARLY, ARROWOOD and KASTL, Appellate Military Judges.

1. The motion to consider the attached letters is denied. The letters will be forwarded to The Judge Advocate General as part of the record for his consideration of possible clemency action.

DECISION

EARLY, Chief Judge:

Tried by special court–martial, the accused was convicted, despite his pleas of conspiracy to sell hashish and marijuana, and two sales of hashish, and, pursuant to his pleas, of using marijuana, in violation of Articles 81 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 934. The approved sentence extends to a bad conduct discharge, confinement at hard labor for 60 days, forfeiture of $200.00 per month for two months and reduction to airman basic.

Appellate defense counsel assign three errors and move to attach letters for consideration of sentence appropriateness. We find only the first issue meriting our consideration.[1]

In this issue appellate defense counsel contend that the military judge erroneously denied the defense counsel's motion to dismiss the specification of Charge I (conspiracy) and specifications 1 and 2 of Charge II (sales of hashish) for lack of jurisdiction. We disagree.

The evidence supporting the exercise of military jurisdiction over the listed offenses was provided by an informer working for the Air Force Office of Special Investigations (OSI). The informer testified in pertinent part that: on the 21st of May he talked to the accused's roommate at Cannon Air Force Base about buying marijuana; on the 23d of May the roommate told the informer that he could supply the marijuana and "quoted . . . a price,"[2] but that it would be easier to go to his roommate (the accused); on the 25th of May the informer talked to the accused at Cannon Air Force Base and was told that the accused could get some "hash" but that he would need a ride to a friend's house off base; the informer then contacted the OSI, and after

2. Appellate defense counsel assert that the evidence does not establish that the exact price was agreed upon during the on base negotiations. However, both parties seemed to be aware of the price for the drugs at the time of the transfers.

being searched was provided with money for the purchase; the informer went to the accused's room where he told the accused that he intended to bring the drugs back to the base; they then went to a house in Clovis, New Mexico, where the informer gave the accused $20; the accused took the money and went into the house and returned with two grams of hashish; the informer gave the accused the "other $10" which the accused took into the house; the two then returned to Cannon Air Force Base with the hashish where the accused was left at his barracks. Several days later the informer was approached by the accused at a hangar on base where the informer asked if the accused could provide three more grams of hashish. The accused agreed, and a similar arrangement for transportation off base was arranged. Again the informer stated that the hashish would be brought back on base. The two went to the same house in Clovis, New Mexico, but this time the informer went into the house where he met a civilian named "Ted". The accused told Ted what the informer wanted and "Ted opened a metal container, took out three grams of hash and laid them on the table." The informer gave $45 to the accused who handed it to Ted. The accused and the informer then returned to the base with the hashish.

In sum, the initial contacts and the essential negotiations occurred on base, and the drugs were brought back on base after the off-base transfer. Under such circumstances we find the exercise of military jurisdiction proper. *United States v. Cornell*, 9 M.J. 98 (C.M.A.1980)[3] and cases cited therein; *United States v. D'Aloise*, 8 M.J. 703 (A.F.C.M.R.1980), pet. denied, 9 M.J. 46 (C.M.A. 23 April 1980).

The findings of guilty and the sentence are

AFFIRMED.

ARROWOOD and KASTL, Judges, concur.

---

3. This case displays the convoluted factual analysis required to establish the primacy of military jurisdiction. It would seem that the fact that one serviceman sells illegal drugs to another should, of itself, be a sufficient military interest which can best be vindicated in military courts. See *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *United States v. Tinley*, 2 M.J. 694 (A.F.C.M.R.1976), aff'd, 4 M.J. 86 (C.M.A.1977).