UNITED STATES

v.

**Airman Basic Michael D. LOWERY, FR 556–53–4605 United States Air Force.**

**ACM 23404.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 8 Dec. 1981.

Decided 8 July 1982.

Appellate Counsel for the Accused: Colonel George R. Stevens and Colonel Michel Levant, USAFR.

Appellate Counsel for the United States: Colonel James P. Porter and Major Peter Reilly, USAFR.

Before HODGSON, C. J., POWELL, Senior Judge, and MILLER, Appellate Military Judge.

## DECISION

HODGSON, Chief Judge:

Tried by general court-martial, the accused was convicted, pursuant to his pleas, of larceny, forgery, and conspiracy, and despite his pleas, of accessory after the fact, in violation of Articles 121, 123, 81 and 78, 10 U.S.C. §§ 921, 923, 881, 878, Uniform Code of Military Justice.* He was sentenced to a bad conduct discharge, confinement at hard labor for one year and one day, and total forfeitures.

### I

The accused along with his roomate, Airman Basic Harden, developed a scheme to defraud the Bank of America. The plan, as outlined by the accused, was simplicity itself. The accused would tell his bank that his personalized checks were missing. He would also notify the security police that his wallet containing his ID card and driver's license had been stolen. Harden would then forge the accused's name on a check, and the accused would use the forged check together with the "stolen" identification to obtain merchandise. Since the signature on the check was not the accused's, the bank could not debit his account.

On 19 May 1981, the accused reported to the security police and the Bank of America

that his personalized checks had been stolen. At the accused's request, Harden forged the accused's name to check # 122. Later the same day the accused presented that check in the amount of $284.56 to a sales clerk at Sears Roebuck Company in Merced, California, for assorted stereo equipment and other goods. After leaving Sears, the accused put the items in his car and immediately returned to the base.

The military judge made these findings concerning the forgery and larceny allegations:

A) The plan or design to commit the offenses took place on Castle Air Force Base, California.

B) The accused did the following acts on base:

1) Solicited Harden to forge the accused's name on check # 122, which he did;

2) Notified the security police that his wallet and check book had been stolen; and

3) Notified his bank, which was located on base, that his check book had been stolen.

C) The intent to defraud Sears Roebuck by use of a forged check was formed at Castle Air Force Base; and

D) The goods obtained from Sears Roebuck were immediately asported to Castle Air Force Base.

The judge then concluded that only a trial by court-martial could adequately vindicate the distinct military interest over the offenses of forgery and larceny.

### II

The accused, citing *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969) and *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), claims the Air Force lacks jurisdiction over the forgery and larceny offenses. He urges the gravamen of each offense took place off base thus removing any "service connecting" circumstance. The Government argues that the totality of facts combined to

---

* He was acquitted of an additional allegation of larceny.

create the "service connection" required to give the military jurisdiction, i.e., the scheme to defraud was conceived on base, the check included both the accused's and the bank's military address, the accused used his "stolen" identification in uttering the check, and the property was immediately returned to the base.

▮ The locus of an offense off base does not necessarily preclude jurisdiction. *United States v. Lampani*, 11 M.J. 632 (A.F. C.M.R.1981). An offense occurring off base may still be "service connected" if sufficient essential preliminary acts are accomplished on base. *United States v. Cornell*, 9 M.J. 98 (C.M.A.1980); *United States v. Strangstalien*, 7 M.J. 225 (C.M.A.1979); *United States v. Carr*, 7 M.J. 339 (C.M.A. 1979); *United States v. Self*, 5 M.J. 551 (A.F.C.M.R.1978); *United States v. Eggleston*, 6 M.J. 600 (A.C.M.R.1978); *United States v. Stone*, 6 M.J. 686 (N.C.M.R.1978).

▮ Under the unique facts of this case, we find that the court had jurisdiction. The off base transfer of the forged check and the fraudulent obtaining of goods as the result of that forgery were simply the final steps of a series that began on base and continued there through all essential steps but the last. No discussions or arrangements occurred off base except the transfer itself. We find it highly significant that the stolen goods were promptly asported to the base. *See United States v. Escobar*, 7 M.J. 197 (C.M.A.1979). The military judge's ruling that the distinct military interest could only be vindicated adequately at a court-martial was fully justified. *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *United States v. Lampani, supra; United States v. Stewart*, 1 M.J. 750 (A.F.C.M.R.1975); *Cf. United States v. Chitwood*, 12 M.J. 535 (A.F.C.M.R.1981) *pet. denied* 13 M.J. 13 (1982).

### III

▮ In the Specification of Charge III, the accused is named as an accessory after the fact in the alleged theft of a camera by Airman Basic Daniels. On appeal, as he did at trial, the accused argues that his confession was uncorroborated and should have been excluded. The Government presented only the stipulated testimony of Airman Basic Faiola as the basis for admitting the accused's statement. This stipulation established the following:

> At 0200, 17 May 1981, a party started in my room. The following people were present during the time of the party: Airman Basic Timothy P. Harden, Airman Basic Michael D. Hughes, Airman Basic Dana P. Daniels, and Airman Basic Michael D. Lowery. At approximately 0220 I fell asleep. I know my camera, an Asahi Pentax .35mm, model number K–100, Serial Number unknown, was on the bottom shelf of my bookcase when I fell asleep. When I awoke, at approximately 0300, my camera was missing and the only person in my room at the time was Airman Basic Harden. I later reported the theft of my camera to the security police. The camera had a value in excess of $100.00 at the time it was stolen from me.

Mil.R.Evid. 304(g) adopts the pre-Rules practice which requires corroboration of a confession before it could be used as evidence on the question of guilt or innocence. The corroboration must come from independent evidence which is sufficient to justify an inference that the facts admitted by the accused are true. The Rule recognizes that the quantum of evidence is generally slight and can be either direct or circumstantial. *See generally*, S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence* 81 (1981).

The elements of the offense of accessory after the fact, in violation of Article 81, Code, *supra*, are:

> (a) That an offense punishable by the Code was committed; (b) that the accused received, comforted, or assisted the offender for the purpose of hindering or preventing his apprehension, trial, or punishment; and (c) that the accused knew that the person so received, comforted, or assisted was the offender.

The accused in his confession acknowledged knowing that Daniels had stolen Faiola's camera. He further admitted hiding the camera in his car trunk and later concealing it off base so it could not be found.

■ There has always been debate concerning the level of corroboration necessary to substantiate the existence of the crime charged. What we find missing in the case before us is the inference, based on Faiola's stipulated testimony, that the accused knew that Daniels had stolen the camera, and that he assisted Daniels to prevent the latter's apprehension. Apart from the accused's statement, the Government established only that the accused was at a party with four others where a camera was discovered missing and presumed stolen. In our view this falls far short of fortifying the truth of the accused's statement that he knew Daniels had stolen Faiola's camera and, by concealing it, helped prevent his (Daniels') apprehension. Cf. *United States v. Dake*, 12 M.J. 666 (A.C.M.R.1981); *See United States v. Springer*, 5 M.J. 590 (A.F. C.M.R.1978). The findings of guilty of the Specification of Charge III and Charge III are set aside and the Charge is dismissed.

We have considered the remaining assigned errors and have resolved them adversely to the accused. The remaining findings of guilty are affirmed. Reassessing the sentence in the light of the dismissed charge, the offenses affirmed, the accused's disciplinary history, and entire record, we find the sentence nonetheless appropriate and it is

AFFIRMED.

POWELL, Senior Judge, and MILLER, Judge, concur.